# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CR. NO. 14-120** |
| | § | |
| **LORETTA MBADUGHA,** | § | |
| **Defendant** | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Suzanne Bradley, Special Assistant United States Attorney, and Defendant Loretta Mbadugha, and Defendant's counsel, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count 1 of the Indictment.  Count 1 charges Defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, § 1349.  Defendant, by entering this plea, agrees that she is waiving any right to have the facts that the law makes essential to the

1

punishment either charged in the Indictment or proven to a jury or judge beyond a reasonable doubt.

## Punishment Range

2.      The **statutory** maximum penalty for a violation of Title 18, United States Code, § 1349 is a term of imprisonment of not more than 10 years and a fine of not more than $250,000.  Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years for both charges. Title 18, United States Code, §§ 3559(a) and 3583(b).  Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release which may be imposed as part of her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.    Title 18, United States Code, §§ 3559(a) and 3583(e)(3).   Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

## Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, §3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States

District Court a special assessment in the amount of one hundred dollars ($100.00), representing a $100 per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.     If Defendant is not a citizen of the United States, a plea of guilty may result in deportation, removal, and/or exclusion from admission to the United States, or the denial of naturalization. A plea of guilty may also result in Defendant being permanently barred from legally entering the United States after being deported, removed, and/or excluded. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Cooperation

5.     The parties understand this Agreement carries the potential for a motion for departure under § 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment

and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to § 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the money judgment and forfeiture of assets contemplated in paragraph 43 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.     Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant, including, but not limited to, health care fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)    Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas and Defendant, and that it does not bind any other United States Attorney or other component or unit of the Department of Justice;

(b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive her Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

4

(d)   Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)   Defendant agrees to provide to the United States all documents in her possession or under her control relating to all areas of inquiry and investigation.

(f)   Should the recommended departure, if any, not meet Defendant's expectations, Defendant understands she remains bound by the terms of this Agreement and that she cannot, for that reason alone, withdraw her plea.

## Waiver of Appeal

7.   Defendant is aware that Title 28, United States Code, § 1291, and Title 18, United States Code, § 3742, afford a defendant the right to appeal the conviction and sentence imposed.  Defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence imposed, or the manner in which the sentence was determined.  Additionally, Defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise

permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.  In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks her conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.     In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that she may have received from her counsel, the United States, or the Probation Office, is a prediction, not a promise, and **did not induce her guilty plea** and is not binding on the United States, the Probation Office, nor the Court.  The United States does not make any promise or representation concerning what sentence Defendant will receive.  Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court.  *United States v. Booker*, 125 S.Ct. 738 (2005).  Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.     Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

## The United States' Agreements

10.    The United States agrees to each of the following:

(a)    If Defendant pleads guilty to Count 1 of the Indictment and persists in that plea through sentencing, and if the Court accepts this Plea Agreement, the United States will move to dismiss any remaining counts of the Indictment at the time of sentencing and will move to dismiss the Indictment and Superseding Indictment pending against the Defendant in Cause Number 14-195s;

(b)    At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that she receive a two (2) level downward adjustment under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.);

(c)    If Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States may move for an additional one (1)-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding her role in the offense; and

(d)    The United States and the Defendant agree to recommend the loss amount is under Section 2B1.1 of the Sentencing Guidelines.

## Agreement Binding - Southern District of Texas Only

11.     The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment.   This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.  It does not bind any other United States Attorney.  The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

## United States' Non-Waiver of Appeal

12.     The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines.  Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13.     Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

## Rights at Trial

14.     Defendant represents to the Court that she is satisfied that her attorney has rendered effective assistance. Defendant understands that by entering into this

9

Agreement, she surrenders certain rights as provided in this Plea Agreement.

Defendant understands that those rights include the following:

(a)  If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)  At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court.

(c)  At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, she could testify on her own behalf.

### Factual Basis for Guilty Plea and Forfeiture of Real Property

15.  Defendant is pleading guilty because she <u>is</u> guilty of the charges contained in Count 1 of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

16.  Beginning in 2008 and through 2010, Defendant Mbadugha, doing business as Bayou Rehab and Family Service, Inc., located in Houston, Texas, in

the Southern District of Texas, knowingly, intentionally and willfully engaged in a health care fraud conspiracy with Defendant Charles Harris and Defendant Dr. Augustine Egbunike, as well as with other individuals.

17.    Defendant Egbunike, licensed as a physician in Texas, allowed his Medicare and Medicaid provider number to be billed upon fraudulently by Mbadugha when in fact the services billed for were either medically unnecessary, not performed, or performed by medically unlicensed individuals.

18.    Defendant Mbadugha routinely caused Medicare and Medicaid to be repetitively billed for various types of diagnostic vestibular testing on Medicare and Medicaid patients, using the same six to seven diagnostic testing codes for all patients.

19.    Defendant Mbadugha would send "superbills" to Egbunike's biller, C.S., who would enter the vestibular claim information using Egbunike's provider number.  The Bayou superbill was a preprinted with the seven vestibular codes, and contained hand-written notes showing the dates of service for each alleged vestibular test, along with the patient's name, address, date of birth and Medicare beneficiary number.  This was all the information needed to bill.

20.    Defendant Mbadugha sent her employees, who were not licensed physical therapists or licensed audiologists, usually into patients' homes, to

perform some form of rudimentary vestibular testing and/or "balance training." Medicare and Medicaid require physical therapy and vestibular testing to be supervised by licensed physician or performed by a licensed physical therapist or licensed audiologists, or the claim will not be paid.

21.    Regarding Medicare Patient L.B., on or about June 2, 2009, Defendants Egbunike and Mbadugha caused Medicare to be billed under six codes for diagnostic vestibular testing for L.B. that was not provided, not medically necessary and/or performed by unlicensed, unsupervised persons.  Patient L.B. lived in a group home during the timeframe of the indictment, suffered from seizures, was in a wheelchair and was blind.  Because L.B. was blind, many of the diagnostic tests which measure eye movement with moving dots would have been impossible to perform.  Defendant Egbunike had a patient file on L.B. showing an initial assessment of L.B.'s medical condition.

22.    From on or about November 17, 2008 through on or about August 25, 2009, Defendants Mbadugha and Egbunike, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 72 different dates of service using seven vestibular diagnostic codes for patient L.B., for a total billed amount of $34,800.00 with $21,847.30 being paid to Defendant Egbunike. In all, 905 vestibular diagnostic tests were billed to Medicare for patient L.B.

These tests were either not medically necessary, not performed as billed, or performed by an untrained, medically unlicensed individual.

23.     Defendant Mbadugha routinely met with Defendant Egbunike to receive her testing payments sent to Defendant Egbunike by Medicare. Defendant Egbunike wrote checks drawn on his Wells Fargo account x3367 -- where the Medicare funds were automatically deposited for the fraudulent vestibular testing.

24.     In all, Defendant Egbunike paid Bayou Rehab and Defendant Mbadugha approximately $404,157.12, from on or about December 11, 2008 through 2009, as shown by checks from Egbunike's Wells Fargo account x3367.

25.     As a result of this fraudulent scheme between Defendant Mbadugha and Defendant Egbunike, Medicare and Medicaid were billed approximately $729,390, with approximately $421,235.70 in Medicare funds being paid to both Defendant Mbadugha and Defendant Egbunike as a result of the fraud.

26.     Defendant Mbadugha admits that she used funds she fraudulently received from the Egbunike conspiracy to purchase a house at 606 Royal Lake Boulevard, Richmond, Texas 77469 on October 21, 2009. Defendant Mbadugha purchased this house as an unmarried woman, according to the title records.

27.     Defendant Mbadugha used approximately $143,387.30 in these fraudulently obtained funds to purchase the Royal Lake house. The requisite

factual nexus of these fraudulent funds to this property for purposes of forfeiture is as follows:

28.     Defendant Mbadugha had two primary bank accounts during the time frame of the fraud.   She used both to purchase the Royal Lakes house on October 21, 2009.  Both accounts were at Whitney National Bank.  Those bank accounts ended in the last four digits of x7739 and x9458.   An analysis of the bank records of these two accounts shows that Defendant Mbadugha deposited $372,433.79 into account x9458 from November 2008 through November 2010, the timeframe of the conspiracy and directly traceable to the conspiracy.   Of this amount, $327,698.79 came from Defendant Dr. Egbunike and his clinic, Primecare Medical Associates.  Defendant Egbunike only paid Defendant Mbadugha for the false vestibular tests. Another $6,835 in fraudulent funds came from Medstar Primary Care Clinic, PA, solely owned and operated by Defendant Tita (charged in *United States v. Tita,* et al, Criminal No. H-14-195s).  Defendant Tita only paid Defendant Mbadugha for the false vestibular testing.  Another $37,900 was transferred from x7739, which primarily contained funds moved from x9458.  All the deposits in x7739 were from x9458 except for $76,758.33 that also came from Primecare, Defendant Egbunike's clinic, and deposits related to a car insurance payment on June 10, 2009, and a debit for a purchase of a car on June 11, 2009, four months

14

before the purchase of the Royal Lakes house.  In summary, x9458 contained 88.75 percent of funds directly traceable to the vestibular testing fraud.

29.     An analysis of those bank records from account x7739 and its deposits from March 2009 through April 30, 2010 were almost all the result of transfers from x9458.  In account x7739, $244,917.79 was deposited by Defendant Mbadugha as transfers from x9458.

30.     From account x7739, Mbadugha wrote the two initial title checks of $1,000 each, from which she created one cashier's check to Joanne Youssef, of LSI Title Agency, the title company that handled the purchase of the Royal Lakes house. Those transactions are dated Aug. 19, 2009 and September 14, 2009.  The daily balance in x7739 on Aug. 19th was $109,896.37, almost all of which can be traced to Defendant Egbunike and Primecare.  Between Aug. 19th and October 22, 2009, the date of the debit of $141,378.30 (cashier's check 26602500 to LSI Title Agency used to purchase the Royal Lakes house as shown on the HUD statement), Mbadugha transferred  or deposited additional funds from x9458 and Primecare in the amount of $61,086.09, bringing the daily balance at the time the check for the Royal Lakes house presented to the bank to  $165,733.33.

31.     In all, the house was sold for $432,164.65 to Mbadugha.  According to the HUD Settlement Statement, Mbadugha at closing paid $141,378.30 with a

cashier's check to LSI Title Agency along with $500 cash. Her mortgage with JLE Investors, Inc., was for $290,286.35, covering the remainder of the sale.

32.    After the purchase of the house, Mbadugha no longer deposited any funds in x7739, and transferred the remaining approximate $24,355.03 back to x9458.

### Breach of Plea Agreement

33.    If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines

34.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that she will make a full and complete disclosure of all assets over which she exercises direct or indirect control, or in which she has any financial interest.  Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which she has an interest, unless Defendant obtains the prior written permission of the United States.

35.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

36.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary

to effectuate such transfer.  Defendant also agrees to direct any banks which have custody of her assets to deliver all funds and records of such assets to the United States.

37.    Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution and Intended Loss

38.    Defendant stipulates and agrees that for purposes of sentencing her intended loss is $729,390, which both Defendant Mbadugha and Defendant Egbunike billed to Medicare and Medicaid as a result of the fraud, for which Defendant Mbadugha has pled guilty.  Defendant agrees to pay full restitution to the victims regardless of the count(s) of conviction.  Defendant stipulates and agrees that as a result of her criminal conduct, Medicare and Medicaid, the victims, incurred a monetary loss of at least $404,157.12. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims.  Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.  Defendant further understands and agrees that the Unites States does not waive any rights or remedies it may have as a means to reimburse the fraud

victims. Defendant understands and agrees that nothing in this agreement precludes the United States from pursuing statutorily permitted enforcement action and any and all remedies to collect restitution once a restitution order in imposed. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture and Money Judgment

39.     Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:

> real property together with all improvements, buildings, structures
> and appurtenances located at 606 Royal Lakes Boulevard, Richmond,
> Texas 77469, and legally described as follows:
>
>> Lot 20, Block 5, Replat of ROYAL LAKES ESTATES,
>> SECTION 1, a subdivision in Fort Bend County, Texas,
>> according to the map or plat thereof recorded in Slide
>> 1854/B, of the Plat Records of Fort Bend County, Texas
>> (The owner of record is listed as Loretta N. Louis-
>> Mbadugha, a.k.a. Loretta A. Mbadugha.)

40.     Defendant stipulates and agrees that the factual basis for her guilty

plea supports the forfeiture of at least $404,157.12 against her and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for that amount against her and in favor of the United States of America. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, § 853(p) exists. Defendant agrees to forfeit any of her property, or her interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

41.   Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

42.   Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

43.   Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

44.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any.

Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

45.　This written Plea Agreement, consisting of 24 pages, including the attached addendum of Defendant and her attorney, constitutes the complete Plea Agreement between the United States, Defendant, and her counsel.  No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement.  Defendant acknowledges that no threats have been made against her and that she is pleading guilty freely and voluntarily because she is guilty.

46.　Any modification of this Plea Agreement must be in writing and signed by all parties.

　　　Filed at ___Houston___, Texas, on ___December  12___, 2014.

_____
Defendant

Subscribed and sworn to before me on _December 12_____,
2014.


DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By: _____          _____
Suzanne Bradley                                O.J. Lawal
Special Assistant U.S. Attorney                Defense Counsel
Southern District of Texas

22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON  DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CR.  NO.  14-120** |
| | § | |
| **LORETTA MBADUGHA,** | § | |
| **Defendant** | § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant her rights with respect to the pending Indictment.  I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements,</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.  Further, I have carefully reviewed every part of this Plea Agreement with Defendant.  To my knowledge, Defendant's decision to enter into this Agreement is an informed and voluntary one.

Date: 12/12/2014

O.J. Lawal
Attorney for Defendant

23

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.   My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case.  I have read and carefully reviewed every part of this Plea Agreement with my attorney.  I understand this Agreement and I voluntarily agree to its terms.

Date: 12/12/14

Loretta Mbadugha
Defendant