Case 4:14-cr-00120 Document 205 Filed on 04/10/17 in TXSD Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
April 10, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-14-120-4 |
| | § | CIVIL ACTION NO. H-16-3227 |
| LORETTA MBADUGHA, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. §2255 is Movant Loretta Mbadugha's §2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.199),[1] the United States' Motion to Dismiss (Document No.201), and Amended Motion to Dismiss (Document No.203). After reviewing the parties' submissions, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss (Document No. 201) and Amended Motion to Dismiss (Document No. 203) be GRANTED, and that Movant's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 199) be DENIED.

**I.     Procedural History**

Movant Loretta Mbadugha ("Mbadugha"), who is currently in the custody of the United

---

[1] Loretta Mgadugha's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-16-3227 and at Document No.199 in Criminal Action No. H-14-120. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. §2255. This is Mbadugha's first attempt at §2255 relief.

On March 19, 2014, Mbadugha along with Augustine Olisa Chui Egbunike, M.D., Charles Harris, Stella Ucheoma Akwarandu were charged in a fourteen count Indictment. Mbadugha was charged with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count one) and heath care fraud, aiding and abetting, in violation of 18 U.S.C. §§ 1347 and 2. (Counts eight to fourteen). (Document No. 1). On December 12, 2014, Mbadugha pleaded guilty to Count one, pursuant to a written plea agreement. (Document No. 101). Pursuant to the written Plea Agreement, Mbadugha agreed to plead guilty to conspiracy to commit heath care fraud. As to Mbadugha's right to appeal, both directly and collaterally, the Plea Agreement states in pertinent part:

> 7. Defendant is aware that Title 28, United States Code, § 1291, and Title 18, United States Code, § 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant knowingly and voluntarily waives the right to appeal the conviction and sentence imposed, or the manner in which the sentence was determined. Additionally, Defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks her conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

With respect to the factual basis, the Plea Agreement states in pertinent part:

> 15. Defendant is pleading guilty because she is guilty of the charges contained in Count 1 of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

2

16. Beginning in 2008 and through 2010, Defendant Mbadugha, doing business as Bayou Rehab and Family Service, Inc., located in Houston, Texas, in the Southern District of Texas, knowingly, intentionally and willfully engaged in a healthcare fraud conspiracy with Defendant Charles Harris and Defendant Dr. Augustine Egbunike, as well as other individuals.

17. Defendant Egbunike, licensed as a physician in Texas, allowed his Medicare and Medicaid provider number to be billed upon fraudulently by Mbadugha when in fact the services billed for were either medically unnecessary, not performed, or performed by medically unlicensed individuals.

18. Defendant Mbadugha routinely caused Medicare and medicaid to be repetitively billed for various types of diagnostic vestibular testing on Medicare and Medicaid patients, using the same six to seven diagnostic testing codes for all patients.

19. Defendant Mbadugha would send "superbills" to Egbunike's biller, C.S., who would enter the vestibular claim information using Egbunike's provider number. The Bayou superbill was [] preprinted with the seven vestibular codes, and contained hand-written notes showing the dates of service for each alleged vestibular test, along with the patient's name, address, date of birth and Medicare beneficiary number. This was all the information needed to bill.

20. Defendant Mbadugha sent her employees, who were not licensed physical therapists or licensed audiologists, usually into patients' homes, to perform some form of rudimentary vestibular testing and/or "balance training." Medicare and Medicaid require physical therapy and vestibular testing to be supervised by licensed physician or performed by a licensed physical therapist or licensed audiologists, or the claim will not be paid.

21. Regarding Medicare Patient L.B., on or about June 2, 2009, Defendants Egbunike and Mbadugha caused Medicare to be billed under six codes for diagnostic vestibular testing for L.B. that was not provided, not medically necessary and/or performed by unlicensed, unsupervised persons. Patient L.B. lived in a group home during the time frame of the indictment, suffered from seizures, was in a wheelchair and was blind. Because L.B. was blind, many of the diagnostic tests which measure eye movement with moving dots would have been impossible to perform. Defendant Egbunike had a patient file on L.B. showing an initial assessment of L.B.'s medical condition.

22. From on or about November 17, 2008 through on or about August 25, 2009, Defendants Mbadugha and Ebunike, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 72 different dates of service using seven vestibular diagnostic codes for patient L.B., for a total billed

amount of $34,800.00 with $21,847.30 being paid to Defendant Egbunike. In all, 905 vestibular diagnostic tests were billed to Medicare for patient L.B. These tests were either or not medically necessary, not performed as billed, or performed by an untrained, medically unlicensed individual.

23. Defendant Mbadugha routinely met with Defendant Egbunike to receive her testing payments sent to Defendant Egbunike by Medicare. Defendant Egbunike wrote checks drawn on his Wells Fargo account x3367–where the Medicare funds were automatically deposited for the fraudulent vestibular testing.

24. In all, Defendant Egbunike paid Bayou Rehab and Defendant Mbadugha approximately $404,157.12, from on or about December 11, 2008 through 2009, as shown by checks from Egbunike's Wells Fargo account x3367.

25. As a result of this fraudulent scheme between Defendant Mbadugha and Defendant Egbunike, Medicare and Medicaid were billed approximately $729,390, with approximately $421,235.70 in Medicare funds being paid to both defendant Mbadugha and Defendant Egbunike as a result of the fraud.

26. Defendant Mbadugha admits that she used funds she fraudulently received from the Egbunike conspiracy to purchase a house at 606 Royal Lake Boulevard, Richmond, Texas 77469 on October 21, 2009. Defendant Mbadugha purchased the house as an unmarried woman, according to the title records.

27. Defendant Mbadugha used approximately $143,387.30 in these fraudulently obtained funds to purchase the Royal Lake house. The requisite factual nexus of these fraudulent funds to this property for purposes of forfeiture is as follows:

28. Defendant Mbadugha had two primary bank accounts during the time frame of the fraud. She used both to purchase the Royal Lakes house on October 21, 2009. Both accounts were at Whitney National Bank. Those bank accounts ended in the last four digits of x7739 and x9458. An analysis of the bank records of these two accounts shows that Defendant Mbadugha deposited #372,433.79 into account x9458 from November 2008 through November 2010, the time frame of the conspiracy and directly traceable to the conspiracy. Of this amount, $327,698.79 came from Defendant Dr. Egbunike and his clinic, Primecare Medical Associates. Defendant Egbunike only paid Defendant Mbadugha for the false vestibular tests. Another $6,835 in fraudulent funds came from Medstar Primary Care Clinic, PA, solely owned and operated by Defendant Tita (charged in *United States v. Tita*, et at, Criminal No. H-14-195s). Defendant Tita only paid Defendant Mbadugha for the false vestibular testing. Another $37,900 was transferred from x7739, which primarily contained funds moved from x9458. All the deposits in x7739 were from x9458 except for $76,758.33 that also came from Prime care, Defendant Egbunike's

4

clinic, and deposits related to a car insurance payment on June 10, 2009, and a debit for a purchase of a car on June 11, 2009, four months before the purchase of the Royal Lakes house. In summary, x9458 contained 88.75 percent of funds directly traceable to the vestibular testing fraud.

29. An analysis of those bank records from account x7739 and its deposits from March 2009 through April 30, 2010 were almost all the result of transfers from x9458. In account x7739, $244,917.79 was deposited by Defendant Mbadugha as transfers from x9458.

30. From account x7739, Mbadugha wrote the two initial title checks of $1,000 each, from which she created one cashier's check to Joanne Youssef, of LSI Title Agency, the title company that handled the purchase of the Royal Lakes house. Those transactions are dated Aug. 19, 2009 and September 14, 2009. The daily balance in x7739 on Aug. 19th was $109,896.37, almost all of which can be traced to Defendant Egbunike and Primecare. Between Aug. 19th and October 22, 2009, the date of the debit of $141,378.30 (cashier's check 26602500 to LSI Title Agency used to purchase the Royal Lakes house as shown on the HUD statement). Mbadugha transferred or deposited additional funds from x9458 and Primecare in the amount of $61,086.09, bringing the daily balance at the time the check for the Royal Lakes house presented to the bank to $165,733.33.

31. In all, the house was sold for $432,164.65 to Mbadugha. According to the HUD Settlement Statement, Mbadugha at closing paid $141,378.30 with a cashier's check to LSI Title Agency along with $500 cash. Her mortgage with JLE Investors, Inc., was for $290,286.35, covering the remainder of the sale.

32. After the purchase of the house, Mbadugha no longer deposited any funds in x7739, and transferred the remaining $24,355.03 back to x9458. (Document No. 101, pp. 10-16).

Further, an addendum to the Plea Agreement, signed by Mbadugha and her attorney, states:

> I have fully explained to defendant her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one. (Document No. 101, p. 23).

5

> I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms. (Document No. 101, p. 24).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared to which Mbadugha filed written objections to PSR ¶ 43, 48, 67, 69, and 70. (Document No.148). With respect to relevant conduct, the PSR states:

> 70. Loretta N. Mbadugha is identified as the owner of Bayou Rehab and Family Services Inc., in Houston, Texas. through the use of Egbunike and Kientcha-Tita's Medicare provider numbers, Mbadugha utilized the personal identifying information of at least 111 beneficiaries to submit unauthorized and fraudulent claims for various vestibular diagnostic tests. These tests were medically unnecessary, were not provided in accordance with Medicare requirements, or were not actually provided. Mbadugha is held accountable for fraudulently billing Medicare a total of at least $729,390. Mbadugha is viewed as an average participant in the scheme to defraud Medicare.

Mbadugha objected on the ground that she was a remote participant. In response to Mbadugha's objection, the PSR states in pertinent part:

> In this case, the defendant conspired directly with the doctor to use their Medicare provider account, had full knowledge of the number of beneficiaries involved and was fully aware of the resulting number of fraudulent claims submitted to Medicare/Medicaid. The defendant met with the doctor to review the Medicare/Medicaid claims and received up to 60% of the funds paid by Medicare/Medicaid. The defendant was in charge of the operation of her vestibular testing business, and had discretion in how and when to meet with the beneficiaries to administer the purported VNG testing and treatment in this scheme. The probation officer maintains the defendant occupied at least an average rule in the offense. No change is made to the PSR.

The PSR assigned Mbadugha a base offense level of 22. Because Mbadugha accepted responsibility for her activities, and did so timely, her offense level was reduced by three levels. With an adjusted offense level of 19, and a criminal history category of I, Mbadugha had an advisory guideline

sentencing range of 30 to 37 months.

Mbadugha was sentenced on May 6, 2016. She was sentenced to a term of imprisonment of 30 months, to be followed by a 3 year term of supervised release. A $100 special assessment and restitution of $404,157.12. Judgment was entered on May 10, 2016. (Document No. 175). Mbadugha did not appeal.

## II. Discussion

Within one year of her conviction being final, Mbadugha timely filed a §2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 199), in which she claims that she should have received a role adjustment for minor or minimal participation under U.S.S.G. § 3B1.2, as clarified by Guideline Amendment 794. She argues for the retroactive application of Amendment 794. The Government has responded to Mbadugha's § 2255 motion and argues that Movant is not entitled to relief because she waived her right to collaterally attack her sentence, and in any event, challenges to calculations of a sentence under the guidelines are not cognizable in a Section 2255 proceeding. The Government further argues that construing the instant motion as arising under 18 U.S.C. § 3582(c)(2), Mbadugha is not entitled to relief. The Magistrate Judge agrees.

A defendant's waiver of her statutory right to collaterally challenge her conviction with a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant of her right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (Enforcing defendant's voluntary and knowing waiver of § 2255); *United States v. McKinney,* 406 F.3d 744 (5th Cir. 2005) (Enforcing, post-*Booker,* a waiver of appeal right that was signed prior to the issuance of *Booker).* In addition, such waivers

do not "preclude review of a sentence that exceeds the statutory maximum." *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004). In the context of a plea agreement waiver, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir.), *cert. denied*, 546 U.S. 962 (2005). When, however, a defendant alleges that his counsel was ineffective in negotiating a plea agreement, such ineffectiveness claims are not barred by the waiver. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("[i]neffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."); *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001), ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver. Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."), *cert. denied*, 534 U.S. 1085 (2002); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (where the ineffectiveness claims raised in a § 2255 motion relate to counsel's performance at sentencing, the defendant's plea agreement waiver of this right to challenge his conviction in a § 2255 proceeding is enforceable), *cert. denied*, 531 U.S. 1175 (2001).[2]

---

[2] There are some other limited situations in which a plea agreement waiver of the right to seek collateral review under § 2255 is not enforceable, such as where the sentence imposed violates the terms of the plea agreement, the sentence is illegal, or the Government has

Ineffective assistance of counsel claims, including challenges to counsel's performance at sentencing, which do not relate to the validity of the Plea Agreement and waiver, can be waived. *White,* 307 F.3d at 343. Otherwise, "[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded." *White,* 307 F.3d at 344.

Here, the record shows that Mbadugha as part of her written Plea Agreement, waived her right to appeal, and also waived her right to collaterally challenge his conviction and/or sentence. Upon this record, Mbadugha's written Plea Agreement and waiver of appeal and collateral rights contained therein, were knowingly, voluntarily, and intelligently entered. Because Mbadugha has waived her right to bring a § 2255 motion, and because the waiver is valid and should be enforced, it serves as a bar to the instant § 2255 motion, and this § 2255 motion is subject to dismissal.

Even assuming that Mbadugha had not waived her right to collaterally challenge her conviction and sentence, her challenge to the guidelines calculation fails on the merits. The law is clear that misapplications of the Sentencing Guidelines are not cognizable in §2255 motions. *United States v. Williamson,* 183 F.3d 458, 462 (5th Cir. 1999)(internal citation omitted). Mbadugha, relying on Amendment 794 to the U.S.S.G., claims that her sentence should be reduced based on her role

---

suppressed exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). *See DeRoo,* 223 F.3d at 923 ("defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement"); *United States v. Baramdyka,* 95 F.3d 840, 843 (9th Cir. 1996) ("the waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty"), *cert. denied,* 520 U.S. 1132 (1997); *Hollins,* 97 Fed. Appx. at 479 (Waiver does not preclude review of a sentence that exceeds the statutory maximum). None of those circumstances is at issue in this proceeding.

in the offense under U.S.S.G. § 3B1.2. Amendment 794, which became effective on November 1, 2015, did not alter the text of U.S.S.G. § 3B1.2, but merely clarified that the Court should compare the defendant's role to that of other participants in the criminal activity at issue, and not to that of participants in other, similar crimes. U.S.S.G. § 3B1.2, comment 3(a). The Amendment sets forth a "non-exhaustive list of factors" a court "should consider" in determining whether to apply a mitigating role reduction such as:

> (I) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, comment, n.3(C).

The Fifth Circuit Court of Appeals has declined to rule whether or not Amendment 794 is retroactive. *See United States v. Castro*, 843 F.3d 608 (5th Cir. 2016); *United States v. Gomez-Valle*, 828 F.3d 324, 330 (5th Cir. 2016). In both cases, the Fifth Circuit considered whether the defendant would have been eligible for a mitigating role adjustment under U.S.S.G. § 3B1.2, even if the Amendment were retroactively applicable, and concluded the defendant would not have benefitted from the Amendment because the defendant was not eligible for a role adjustment. For instance, in *Gomes-Valle*, the Fifth Circuit noted that "Amendment 794 provides that the adjustment is only applicable for a 'defendant' who is 'substantially less culpable than the average participant in the criminal activity.'" *Id.* at 331. In contrast, the Ninth and Eleventh Circuits have found Amendment 794 to be retroactive on direct appeal. *See United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th

Cir. 2016); *United States v. Casas*, 632 Fed. Appx. 1003, 1005 (11th Cir. 2015). Neither decision by the Ninth or Eleventh Circuit applies since Mbadugha seeks collateral, rather than direct review.

Here, Mbadugha provides no factual support for her argument that she would be entitled to a mitigating-role reduction under Amendment 794's revisions to the commentary of § 3B1.2 of the Sentencing Guidelines. As discussed above, the factual basis in the written Plea Agreement, and the PSR detail Mbadugha's involvement in defrauding Medicare/Medicaid and reveal that she was not substantially less culpable than the average participant in the criminal activity. There is no evidence to suggest that Mbadugha was prevented from taking advantage of Amendment 794, had the facts of her case justified their application. As such, she would not be entitled to relief.

Moreover, a federal court generally "may not modify a term of imprisonment once it has been imposed." *Dillion v. United States*, 560 U.S. 817, 819 (2010). An exception to the general rule is "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). A sentence reduction is only permitted if such a reduction is consistent with the policy statements issued by the Sentencing Commission, which are found at § 1B1.10 of the Sentencing Guidelines. As such, *only* an amendment listed is subsection (c) of U.S.S.G. § 1B1.10 will trigger eligibility for consideration under 18 U.S.C. § 3582(c)(2). § 1B1.10(d) does not list Amendment 794 as retroactive. Thus Mbadugha would not be entitled to relief under 18 U.S.C. § 3582(c)(2).

### III. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion to Dismiss (Document No. 201) and

Amended Motion to Dismiss (Document No. 203) be GRANTED and that Movant's § 2255 Motion (Document No. 199) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. §636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 10th day of April, 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE